United States District Court
Southern District of Texas

**ENTERED**

June 12, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Antoinette Dickson, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 4:25-cv-03189 |
| Newrez LLC, et al., | § § § | |
| *Defendants.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

This is a foreclosure dispute.  On February 26, 2026 Defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing and the Bank of New York Mellon f/k/a New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2006-24, moved to enforce the parties' settlement agreement.  Dkt. 9.  Because Plaintiff Antoinette Dickson did not respond, the motion is deemed unopposed S.D. Tex. L.R. 7.4.  And after reviewing the motion, the record, and the applicable law, it is recommended that the motion to enforce the settlement agreement be granted and this case be dismissed with prejudice.

### Background

Dickson filed this suit in state court on May 2, 2025. Dkt. 1-2 (original petition). She sued Defendants under (1) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e); (2) the Texas Debt Collection Act, Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(8), (19); (3) and Texas common law. *See id.* at 4-5. The following month, the state court granted a motion filed by Dickson's counsel to withdraw from representing her in this suit. Dkt. 1-6 (docket sheet). Defendants then removed the suit to this Court under both federal question and diversity jurisdiction. Dkt. 1 at 2-3 (notice of removal). Since that time, Dickson has proceeded *pro se.*

Within a few weeks, the parties discussed settlement. On August 6, 2025, Dickson emailed Defendants' counsel that she "will agree to dismiss the case with prejudice, a full release, and Shellpoint's standard terms in exchange for" a 60-day postponement of her foreclosure from the date August 7, 2025. Dkt. 13-1 at 3. The next day, Defendants' counsel responded, "We accept these terms and will circulate a settlement agreement here shortly." *Id.* at 2. Counsel followed up by sending a draft formal settlement agreement and release. *Id.* Dickson never signed the formal agreement.

On February 26, 2026, Defendants filed a motion to enforce the settlement agreement. Dkt. 9. Dickson did not respond, rendering the motion unopposed. *See* S.D. Tex. L.R. 7.4. The motion is ripe for resolution.

## Analysis

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (quotations omitted). Defendants invoke that authority, asking this Court to enforce the parties' settlement agreement by dismissing this case. *See* Dkt. 9.

For federal courts sitting in diversity, the enforceability of a settlement agreement is governed by the law of the forum state. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995). But "[q]uestions regarding the enforceability or validity of [settlement] agreements are determined by federal law ... where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Dickson asserts both federal and state law claims. Dkt. 1-2. And Defendants maintain that this Court has both diversity jurisdiction and federal question jurisdiction. Dkt. 1 at 2-3.

The Fifth Circuit had "never explicitly stated what law applies when … the plaintiff brought claims under both federal and state law." *Cavalier v. Jill L. Craft. Att'y at L., LLC*, 2024 WL 2846059, at *3 (5th Cir. June 5, 2024) (per curiam) (applying federal law where Court had supplemental jurisdiction over state law claims, "not diversity"). Regardless, as reflected below, the answer

3

is academic because the parties' agreement is enforceable under both federal and state law.  This case should be dismissed with prejudice.

## I.    Legal framework for enforcing settlement agreements

In this Court, "the enforceability of a settlement agreement in a diversity case ... is governed by the provisions of Rule 11 [of the] Texas Rules of Civil Procedure."  *Harris v. Chi St. Luke's Health Baylor Coll. of Med. Med. Ctr.*, 2023 WL 2170804, at *1 (S.D. Tex. Feb. 22, 2023) (quotation omitted), *aff'd*, 2023 WL 8804494 (5th Cir. Dec. 20, 2023) (per curiam); *see also Cavallini*, 44 F.3d at 266.  Rule 11 requires a settlement agreement to be "in writing, signed and filed with the papers as part of the record …."  Tex. R. Civ. P. 11.

Under federal law, the enforceability of a settlement agreement is guided by "general common law principles of contracts."  *Cavalier*, 2024 WL 2846059, at *3 (citing *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015)).  "[T]here must be an offer, an acceptance, consideration, the inclusion of all material or essential terms, and a meeting of the minds among the parties."  *Id.*  "As far as enforcing a settlement agreement is concerned, the only substantive difference between federal law and Texas law is that '[f]ederal law does not require settlement agreements to be reduced to writing.'"  *Peacock v. Deutsche Bank Nat'l Tr. Co.*, 2022 WL 1185173, at *2 (S.D. Tex. Apr. 19, 2022) (quoting *E.E.O.C. v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011)), *adopted by* 2022 WL 2176740 (S.D. Tex. June 16, 2022).

4

## II.   The parties have an enforceable agreement to settle this case.

Citing Texas law, Defendants contend that the parties' email communications constitute an enforceable settlement agreement. *See* Dkt. 9 at 4. They are correct. But the agreement is also enforceable even if federal law applies.

### A.   The parties agreed in writing to all material terms.

The parties' communications were in writing and addressed all material terms. In Texas, a settlement agreement requires a "written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings ….'" *Harris*, 2023 WL 2170804, at *2 (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)). An email exchange can satisfy that requirement. *See id.* (citing *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 561 (Tex. 2018)).

Federal law does not require settlement agreements to be in writing. To be enforceable, though, federal law requires proof "that the parties reached an agreement regarding all material terms." *Paris v. TransUnion LLC*, 2025 WL 1287748, at *2 (S.D. Tex. Apr. 30, 2025) (quoting *Lozano v. Metro. Transit Auth. of Harris Cnty.*, 2016 WL 3906295, at *3 (S.D. Tex. July 19, 2016)).

Determining whether a term is material is "a legal question that the court examines on a case-by-case basis." *Coe v. Chesapeake Expl., LLC*, 695

5

F.3d 311, 320 (5th Cir. 2012) (applying Texas law).  The materiality of a given settlement term depends on the nature of the dispute.  *Cf. APS Cap. Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272 (5th Cir. 2009) (whether contract terms are "essential" depend "largely on the type of contract at issue" (quotation omitted)).  Generally, "[r]elease provisions are … material terms of settlement agreements."  *In re Deepwater*, 786 F.3d at 357 (federal law).

Here, Dickson offered to "dismiss the case with prejudice, a full release, and Shellpoint's standard terms in exchange for" a 60-day postponement of her foreclosure beginning August 7, 2025.  Dkt. 13-1 at 3.  Defendants responded by accepting Dickson's terms.  *Id.* at 2.  That exchange clearly constitutes a written agreement.

Moreover, when filing this suit on July 9, 2025, Dickson sought to avoid an impending foreclosure sale, observing that she anticipated receiving "funds from a legal settlement that will be distributed within 30-60 days" that she would use "to reinstate the loan and retain her homestead."  Dkt. 1-2 at 4.  Thus, Defendants' agreement to postpone foreclosure for 60 days in exchange for Dickson's promise to dismiss and release her claims covered all the essential and material terms.  *See, e.g., Paris*, 2025 WL 1287748, at *2 (finding that whether emails contained all material terms was "not a close call"; counsel "identified five settlement terms" and plaintiff responded "Yes, I accept"); *Peacock*, 2022 WL 1185173, at *3 (emails formed a binding settlement under

Texas and federal law; plaintiffs agreed not to "contest a foreclosure" if defendant gave them "90 days to sell or refinance the property").

After accepting Dickson's terms, Defendants sent a draft formal settlement agreement, which Dickson never signed. *See* Dkt. 9 at 2-3; *see also* Dkt. 13-1 at 2. But Dickson's refusal "to execute a formal agreement that recites the terms of the settlement does not preclude a district court from exercising such discretion to enforce" the material terms to which the parties had already agreed. *See Kirby v. State Farm Lloyds*, 663 F. Supp. 3d 656, 668 (N.D. Tex. 2023) (citing *Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam) (applying Texas Rule 11)); *see also Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (per curiam) (under federal law, when a party agrees to settlement but later "changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement"); *In re Deepwater*, 786 F.3d at 357 ("[C]ourts routinely enforce settlement agreements even where the precise wording of a release has not been finalized" and "one of the parties ultimately fails to sign the finalized release." (quotations omitted)). The email agreement is enforceable.

**B.    The email agreement was also signed and filed.**

The agreement also satisfies additional state-law requirements.  Unlike federal law, Texas law requires that the writing be "signed."  *See* Tex. R. Civ. P. 11.  An agreement made via email can also satisfy that requirement.  *See Shamrock*, 540 S.W.3d at 561 (finding email agreement was "signed").  But Texas appellate courts "have disagreed about *how* emails can be sufficiently 'signed' for purposes of Rule 11."  *Thang v. Defy Int'l*, LLC, 712 S.W.3d 647, 663 (Tex. App.—Houston [14th Dist.] 2025, no pet. h.) (emphasis added).  The Texas Supreme Court has not resolved that split.

One Texas intermediate appeals court found that an email signature block was insufficient to show that the email was "signed" under Rule 11, absent other indicia that the sender typed it purposefully or otherwise intended to sign it electronically.  *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 530 (Tex. App.—Fort Worth 2011, pet. denied).  But at least three sister courts have disagreed, holding that email signature blocks satisfy Rule 11's signature requirement.[1]  *See Khoury v. Tomlinson*, 518 S.W.3d 568,

---

[1] The *Khoury* decision further held that a party's or counsel's "name or email address in a 'from' field functions as a signature in an email."  518 S.W.3d at 576-77.  Several district court opinions have followed that view.  *See, e.g.*, *Harris*, 2023 WL 2170804, at *2 (emails are "signed" where "the names and email addresses of the lawyers are readily apparent in the 'from' field of the email exchange"), *aff'd*, 2023 WL 8804494 (5th Cir. Dec. 20, 2023) (per curiam); *Kirby*, 663 F. Supp. 3d at 670 (noting that "because the 'from' field functions to identify the sender of the e-mail and

8

578 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (rejecting *Cunningham*); *see also Morales v. Lowenberg*, 2026 WL 1506469, at \*4 (Tex. App.—Austin May 28, 2026, no pet. h.) (agreeing that "[r]egardless of whether parties … type their names in an email or create a 'signature block' to be included with their email, the effect is the same.  They have signed it." (quoting *Thang*, 712 S.W.3d at 664)); *Perdido Props. LLC ex rel. Bremer v. Devon Energy Prod. Co., L.P.*, 669 S.W.3d 535, 561 (Tex. App.—Eastland 2023, pet. denied) ("[E]ither a typed name or a signature block at the end of an email is sufficient to constitute a signature.").

Given the lack of binding authority resolving the split, this Court "must make an '*Erie* guess' and determine as best it can what the state high court would most likely decide." *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 708-09 (N.D. Tex. 2013).  In doing so, this Court should follow the weight of authority and conclude that the parties' emails satisfy Rule 11's signed writing requirement.

As the majority view observes, Rule 11's "signature requirement safeguards against disputes over whether parties mutually consented to the written agreement." *Thang*, 712 S.W.3d at 664.  "Consistent with the Restatement [(Second) of Contracts], 'Texas recognizes typed or stamped

---

authenticate the e-mail, the court determines that the e-mail agreement between the parties was signed").  There is no need to address that aspect of *Khoury*'s rationale.

signatures ... so long as they are rendered by or at the direction of the signer.'"
*Id.* (quoting *Reinagel v. Deutsch Bank Nat'l Trust Co.*, 735 F.3d 220, 237 (5th
Cir. 2013)); *see also* Restatement (Second) of Contracts § 134 cmt. a (1981)
("[S]ignature[s] may be written in pencil, typed, printed, made with a rubber
stamp, or impressed into the paper."). Based on those principles, it should not
matter whether an email's author manually typed a signature for that email
alone or crafted a signature block to stamp all their communications. Either
way, the communication has been signed. *See, e.g.*, *Williamson*, 947 F. Supp.
2d at 709 (emails formed a signed agreement where one party closed emails
with his first name and the other with his signature block).

The parties' email correspondence includes the necessary signatures.
Dickson's offer closes with "Respectfully, Dr. A.R. Dickson," complete with her
email address and phone number, and Defendants' counsel's acceptance bears
the closing "Best, Byron Keaton," accompanied by his contact information.
Dkt. 13-1 at 3. Even assuming those signatures were automatically generated,
they carry the same imprimatur and effect as a manual signature—i.e., to
affirm and reflect each side's assent to that agreement. *See id.* ("Per our
conversation today, concerning settlement ...."). Rule 11's signature
requirement was met.

The final Rule 11 requirement—that the agreement be filed as part of
the record—is easily satisfied. Defendants submitted copies of the emails

10

comprising the agreement. *See* Dkt. 9 at 2-3 (redacted emails); Dkt. 13-1 (unredacted); *see Harris*, 2023 WL 2170804, at \*2 (same requirement met by filing of email exhibits); *see also Wagner v. NewRez, LLC*, 2023 WL 3262059, at \*3 (S.D. Tex. May 2, 2023) (same), *adopted by* 2023 WL 3587552 (S.D. Tex. May 22, 2023). Thus, even under Texas's stricter standard, the parties have an enforceable settlement agreement.

### C.   The sole remedy is to dismiss this case.

Because the settlement agreement should be enforced, the proper outcome is to dismiss this case with prejudice, just as Dickson agreed to do. In their motion, however, Defendants embedded a passing request that Dickson be commanded "to tender an executed copy of the Confidential Settlement Agreement and Release" which Defendants sent to Dickson without response. Dkt. 9-1 (proposed order); Dkt. 10 (sealed confidential settlement agreement and release). That is not appropriate relief.

Dickson's offer stated that she would agree to "Shellpoint's standard terms …." Dkt. 13-1 at 3. But she did not specify what those terms were. Nor have Defendants demonstrated that Dickson meant those specific, identical terms in the proposed Confidential Settlement Agreement and Release that she never signed and to which she did not assent. And Defendants cite no authority supporting their request to compel the execution of a further contract to which Dickson never agreed. *See Paris*, 2025 WL 1287748, at \*3-4 (enforcing

11

only the settlement agreement set forth in the parties' emails, not the proposed written agreement defendant's counsel sent thereafter that plaintiff never signed). The only appropriate remedy is to dismiss Dickson's claims with prejudice.

<u>**Recommendation**</u>

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motion to enforce the settlement agreement (Dkt. 9) be **GRANTED**, and this suit be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 12, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

12